IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JERRY L. WHITAKER,
          Plaintiff,

v.                                          Civil Action No. 3:19-cv-923

THE CITY OF HOPEWELL, VIRGINIA,
          Defendant.

## OPINION

This case involves an employment dispute between the plaintiff, Jerry L. Whitaker, and his former employer, the City of Hopewell, Virginia (the "City"). Whitaker, who worked for the City as its Director of Finance, contends that the City fired him because of his race and in retaliation for reporting EEOC violations and the misuse of government funds.[1] The City asserts that it rightfully fired Whitaker for four reasons: (1) his failure to timely complete an annual financial audit—the comprehensive annual financial report (the "CAFR")—that he oversaw as the City's Finance Director; (2) his unprofessional interactions with his staff and City Council; (3) his failure to report serious matters to the City Manager, Mark Haley; and (4) his chronic tardiness and absenteeism.

Even viewed in the light most favorable to him, the evidence shows that the City fired Whitaker for legitimate, nondiscriminatory reasons—the late CAFRs, his chronic tardiness and absenteeism, and his unprofessional behavior. Whitaker has not pointed to any evidence to show

---

[1] Whitaker brings four claims: race-based disparate treatment, in violation of 42 U.S.C. § 1981 (Count One); retaliation, in violation of § 1981 (Count Two); a § 1983 First Amendment claim (Count Three); and a violation of the Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.8 (the "VFATA") (Count Four).

that the City fabricated those reasons as a pretext to fire him because of his race or in retaliation for protected activity or speech. This entitles the City to summary judgment.[2]

## I. BACKGROUND

### A. The CAFR

Whitaker, a fifty-eight-year-old black man, worked as the Director of Finance for the City from 2012 through 2016. He oversaw an annual comprehensive financial audit—the CAFR—that evaluated the City's financial health. Whitaker never completed the CAFR on time. He completed the 2013 CAFR over two months late and the 2014 CAFR almost seven months late. Whitaker also did not timely complete the 2015 CAFR. In fact, he did not complete the 2015 CAFR at all because, with the 2015 CAFR already nearly thirteen months late, the City Manager, Mark Haley, fired Whitaker on December 16, 2016.[3]

Whitaker does not take responsibility for the late 2015 CAFR. Instead, he blames (1) understaffing and high turnover in his department; (2) his inability to fire the Accounting Manager, Dipo Muritala, without prior permission from Haley; and (3) delays in receiving information from other departments, specifically the Treasurer. He also notes that both his predecessor and successor submitted late CAFRs.

### B. Reporting Misuse of Funds

On August 18, 2016, Whitaker emailed Haley and Assistant City Manager Charles Dane to report the misuse of government funds by another City employee. On November 9, 2016,

---

[2] The parties have submitted a joint motion to reset pretrial deadlines. (ECF No. 12.) Because the Court will grant the City's motion for summary judgment, it will deny as moot the joint motion to reset pretrial deadlines.

[3] The City ultimately filed the 2015 CAFR on August 31, 2017, twenty-one months late. Moreover, the deadline to complete the 2016 CAFR had passed when the City terminated Whitaker.

Whitaker notified City Council of the misuse of government funds. He took no other action regarding the misuse of funds.

### C. Alleged EEOC Violations

In his November 9, 2016 communication with City Council, Whitaker claimed to have witnessed and experienced multiple unidentified EEOC violations. He also described the City as "a hostile and toxic work environment." (ECF No. 8-19, at 24.) Then, on December 15, 2016, Whitaker emailed City Council, saying:

> I am so disgusted in the overall level of immaturity of management, the lack of professionalism, the lack of support from executive staff, and the level of EEOC violations that I have been subjected to on a daily basis for the past three years of my employment with the City of Hopewell.

(ECF No. 8-20.)[4]

### D. Termination

The day after he emailed City Council, the City fired Whitaker for his failure to timely complete the CAFR, his failure "to report serious matters to [Haley's] attention for resolution," his "absences and chronic tardiness," and unprofessional behavior toward his staff and City Council. (ECF No. 8-21.)

---

[4] Despite claiming to have experienced widespread EEOC violations, Whitaker never submitted any complaints to Human Resources during his tenure with the City.

## II. DISCUSSION[5]

### A. § 1981—Race-based disparate treatment

Whitaker does not provide direct evidence of racial discrimination. Accordingly, he must proceed under the *McDonnell Douglas* burden-shifting test. *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 991 (E.D. Va. 2017). Under the *McDonnell Douglas* test, Whitaker must first establish a prima facie case of racial discrimination. If he does, then the City must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). If the City does that, then Whitaker must "show that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* (quoting *Lettieri*, 478 F.3d at 646).

To establish a prima facie case of discrimination,[6] Whitaker must show: "(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that he was performing at a level that met his employer's legitimate expectations; and (4) that [his] position was filled by a similarly qualified applicant outside the protected class." *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016)). Whitaker could also

---

[5] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[6] "Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same." *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *see also Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018). Accordingly, Title VII and § 1983 cases provide legal principles that inform the Court's analysis of Whitaker's § 1981 claim.

4

satisfy the fourth element by showing that the City treated him "differently than similarly situated employees outside the protected class." *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007).

Both parties agree that Whitaker has established the first two elements. Whitaker has not, however, identified facts to establish the third or fourth element. Accordingly, the Court will grant the City summary judgment on Whitaker's § 1981 race-based discrimination claim.

### *1. Legitimate Performance Expectations*

The City says that Whitaker did not meet its legitimate performance expectations primarily because he did not timely file the 2014 and 2015 CAFRs.

Whitaker could rebut that claim by "(1) pointing out concessions by [the City] that he was performing satisfactorily at the time of the dismissal; (2) offering evidence of his prior satisfactory performance reviews; or (3) providing expert testimony as to [the City]'s performance expectations and an analysis of his performance in light of those expectations." *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F. Supp. 2d 717, 727 (E.D. Va. 2013), *aff'd*, 592 F. App'x 158 (4th Cir. 2014).

Whitaker does none of the above, however. Instead, he blames the City's Treasurer for the untimely 2014 and 2015 CAFRs and "contends that holding him chiefly responsible for the delay in the CAFR is discriminatory in and of itself." (ECF No. 9, at 17.) Whitaker also complains that the City never gave him a performance review that said he did not meet the City's performance expectations. Both arguments fail.

First, Whitaker cannot show that he met legitimate performance expectations by blaming someone else for the late CAFRs. In employment discrimination cases, courts decide whether an employer fired its employee for a discriminatory reason. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). They do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *Id.*

5

(quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)). In other words, courts do not tell employers who they should hold primarily responsible for poor performance. Thus, Whitaker's attempts to blame the Treasurer for the late CAFRs does not establish that he met the City's legitimate performance expectations.

Nor does the absence of a negative performance review. *See Ramos v. Molina Healthcare, Inc.*, 963 F. Supp. 2d 511, 523 (E.D. Va. 2013). Whitaker claims that he never received a performance review "that indicated that he was not meeting Hopewell's or Haley's expectations." (ECF No. 9, at 17.)[7] But in *Ramos*, this Court noted that the "lack of a performance improvement plan and one positive email do not show that Plaintiff *met* his employer's expectations." *Ramos*, 963 F. Supp. 2d at 523 (emphasis in original). Instead, this merely demonstrated "that the employer was not *dissatisfied*." *Id.* (emphasis in original). The Court further noted that the plaintiff did not establish a prima facie case of discrimination—even though he provided evidence that his employer typically used performance improvement plans—because the plaintiff submitted no evidence that his employer *required* a performance improvement plan before firing someone. *Id.* Thus, like in *Ramos*, the lack of a negative performance review here does not "raise a genuine issue with respect to whether [Whitaker] met [the City's] legitimate expectations at the time of termination." *Id.*

Simply put, Whitaker does not "direct[] this Court to evidence in the record to prove that he was meeting the City's expectations." (ECF No. 10, at 5.) Thus, he does not establish a prima facie case of discrimination, which entitles the City to summary judgment.

---

[7] Notably, Whitaker does not state that he received a positive performance review.

## 2. *Similarly Situated Comparator or Replacement*

The City maintains Whitaker cannot identify a similarly situated white worker that it treated differently than him.

"*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981). Thus, Whitaker must "show that [he is] similar in all relevant respects to [his] comparator." *Haywood v. Locke*, 387 F. App'x 355, 359 (2010). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (alteration in original) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).[8]

Whitaker argues that "there are a limited number of employees with whom a comparison can be made" because the City employs only one finance director. (ECF No. 9, at 18.) Thus, he discusses only two comparators: "his predecessor and successor, Elesteen Hager and Lance Wolff, both Caucasian men." (*Id.*)[9]

Regarding Hager, Whitaker says: "Hopewell contends that under Hager, the CAFR was not *as late* as when Whitaker was responsible for the CAFR. However, it has been shown that the

---

[8] As stated above, Whitaker could also demonstrate the fourth element of the prima facie case by showing that the City filled his position with "a similarly qualified applicant outside the protected class." *Sadeghi*, 251 F. Supp. 3d at 991 (quoting *Guessous*, 828 F.3d at 219). Whitaker opted not to pursue this argument, however.

[9] In his complaint, Whitaker mentions other potential comparators, but he discusses only Hager and Wolff in his opposition brief. The Court, therefore, considers the claims regarding other comparators abandoned. *See Lee v. Belvac Prod. Mach., Inc.*, No. 6:18cv75, 2020 WL 3643133, at *9 (W.D. Va. July 6, 2020) (granting summary judgment to the defendant on claims the plaintiff failed to oppose).

7

CAFR produced by Hager had deficiencies which was [sic] later corrected when Whitaker took over the position." (*Id.* (emphasis in original).)  Whitaker cites nothing to support his claim that Hager produced deficient CAFRs that Whitaker corrected.  Even if he could support such a claim, he cites nothing to support the proposition that correcting Hager's errors makes him similarly situated to Hager.  Moreover, unlike Whitaker, Hager reported to City Manager Edward Daley, Haley's predecessor.  For these reasons, Hager is not a similarly situated comparator.

As to Wolff, Whitaker notes that "[b]ased on information published on Hopewell's website, Wolff did not complete the 2015 CAFR until August 31, 2017," and "the 2016 CAFR . . . until October 24, 2018, almost two years after the deadline." (*Id.*)  Whitaker goes on to claim that "[t]here were significant challenges to complete [sic] the 2015 CAFR, which given the delay that Wolff still experienced, indicate that it was not Whitaker who ultimately delayed the timely submission." (*Id.* at 18-19.)  Whitaker does not cite the record to support this claim.  Nor does he identify what "significant challenges" prevented him from timely filing the CAFR.[10]

The City argues that "while Wolff did report to Haley, Wolff was an independent contractor hired to serve as Interim Finance Director until the City could hire a permanent Finance Director." (ECF No. 10, at 7.)  The City also says that Wolff "is not [a] sufficiently similar comparator" because he "inherited a CAFR that was already 13 months overdue and worked with auditors to complete the CAFR, despite the condition in which he found the Finance Department and its books." (*Id.*)

Although Wolff did not timely file the 2015 or 2016 CAFRs, the record reflects three factors that distinguish his untimely filings from Whitaker's.  First, Haley hired Wolff after the

---

[10] Presumably, this refers to Whitaker's complaint that the Treasurer did not give him certain documents that he needed to timely complete the 2015 CAFR.

8

deadline to timely file the 2015 and 2016 CAFRs passed.  Second, *evidence in the record* shows that Wolff had to fix problems with the City's financial record keeping that arose during Whitaker's tenure.  (ECF No. 10-5, at 9-10; ECF No. 10-6, at 8.)  Third, Wolff worked *part-time* as an independent contractor for the City.  Indeed, on December 29, 2016, shortly before the City hired him, Wolff emailed Haley that "in December I made a commitment with a start-up not-for-profit organization as their part-time CFO[,] and I anticipate spending a to be determined amount of time at their site on a weekly basis." (ECF No. 10-4, at 2.)  For these reasons, Whitaker has not shown that he is similarly situated to Wolff "in all relevant respects." *Haywood*, 387 F. App'x at 359.

Whitaker has not identified a similarly situated comparator.  Thus, he has not established the fourth element of a prima facie discrimination case, which entitles the City to summary judgment.

### 3. Legitimate, Nondiscriminatory Reason

The City argues that, even if Whitaker could establish a prima facie case of discrimination, the Court should still grant the City summary judgment because it fired Whitaker for several legitimate, nondiscriminatory reasons, specifically "the late CAFRs, failure to report serious matters, poor attendance, and unprofessional conduct with staff and City Council." (ECF No. 8, at 15.) "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Thus, the City has produced legitimate, nondiscriminatory reasons to fire Whitaker.

9

*4. Pretext*

Whitaker does not contest that the City produced legitimate, nondiscriminatory reasons for firing him. Instead, he argues that he has evidence that shows the City proffered these reasons as a pretext for discrimination. Whitaker may demonstrate pretext by showing that the City's proffered reasons for firing him "[are] not worthy of belief." *Williams v. Staples, Inc.*, 372 F.3d 662, 669 (4th Cir. 2004). Ultimately, Whitaker "bears the burden of showing that race was a but-for cause of [his] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). He cannot show this by merely highlighting his disagreement with the merits of the City's decision to fire him. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (finding that the plaintiff's disagreement with her employer "about the quality of her work" "simply d[id] not provide a legally sufficient basis for" concluding that the employer fired her for a discriminatory reason).

Whitaker claims that several things provide evidence of pretext. First, the City did not use its progressive disciplinary structure with him, and "[a]t no point did Haley meet with Whitaker to discuss a performance improvement plan." (ECF No. 9, at 19.) Second, "Haley allowed Wolff to remain employed, despite taking a longer period of time to complete the CAFR." (*Id.*) Third, Haley incorrectly stated that he did not know the reason for the late CAFR before January 2016, even though in "December 2015, Whitaker told Haley [and others] that the cash reconciliation

10

needed to be completed prior to the auditors starting on the CAFR." [11]   (*Id.*)[12]   Fourth, Haley

prevented Whitaker from firing Muritala even though he "allowed Grandstaff, a Caucasian

Director, to unilaterally make an employment decision." (ECF No. 9, at 20.)[13]

Whitaker also argues that several things show that "Haley's position on [Whitaker's]

attendance was an afterthought to provide a nondiscriminatory reason as to his decision to

terminate Whitaker." (*Id.* at 21.)  First, "as a Director, Whitaker did not have a set schedule." (*Id.*

at 20.)  Second, the City did not "perform an analytical search on Whitaker's computer when

making the determination that he was any more absent or tardy than any other manager." (*Id.*)

Third, "there is no documentation to support any prior discussions with Whitaker regarding a

concern in his attendance." (*Id.* at 20-21.)

---

[11] Whitaker seems less sure of this later in his deposition.  For instance, when asked about an email string from December 28, 2015, Whitaker admits that he only mentioned "the reconciliation of general and fixed assets" when explaining the delayed filing of the CAFR. (Whitaker Dep. 110:8-11.)  He did not provide "a complete list as to the reasons that the CAFR was late" until January of 2016.  (*Id.* at 110:11-13.)  Nevertheless, Whitaker hypothesizes that Haley and City Council "probably" received the reasons for the untimely CAFR before then.  (*Id.* at 110:15-21.)

[12] Even if we assume that Whitaker told Haley before January 2016 that he needed the Treasurer to provide the cash reconciliation to complete the CAFR, nothing in the record suggests that this would have changed Haley's decision to fire Whitaker.  Indeed, Haley said that he fired Whitaker not because Whitaker lacked excuses for the late CAFR, but instead because Whitaker kept making "empty promises about when it would be done." (Haley Dep. 54:18-25.)  Thus, this minor factual discrepancy about "reconciling the Treasurer's cash," (*Id.* at 40:18-41:16), does not warrant sending this case to a jury for resolution. *See Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.")  Basically, Whitaker argues that Haley lied when he said that he did not know about the problems with cash reconciliation until January 2016, and, therefore, that somehow shows the City fired him because of his race.  This argument lacks merit.

[13] Neither party mentions Grandstaff's first name.

None of these things demonstrate pretext and prove that the City "intentionally discriminated against" Whitaker. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253). First, the City's failure to use its progressive disciplinary structure does not prove pretext. "The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent" unless "the irregularity directly and uniquely disadvantaged a minority employee." *Russell v. Harlow*, 771 F. App'x 206, 207-08 (4th Cir. 2019) (quoting *Vaughan v. Metrahealth Cos.*, 145 F.3d 197, 203 (4th Cir. 1998); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1213 (10th Cir. 2010)).

Here, Whitaker merely establishes that the City had a progressive disciplinary structure. He does not show that the City used it with anyone, let alone that the City used the progressive disciplinary structure with white employees and not him. Thus, Whitaker provides no evidence that the City's failure to follow its progressive disciplinary structure "directly and uniquely disadvantaged" him. *Id.*

Wolff's continued employment also does not demonstrate pretext because, as stated above, Wolff inherited a finance department in disarray and worked part-time to complete the 2015 and 2016 CAFRs. Plus, it took Wolff only eight months to complete the 2015 CAFR, not more than thirteen.

Further, Whitaker does not explain how his inability to unilaterally terminate employees established pretext. Clearly, he thinks that if he could have fired Muritala, then he would have performed his job better. That does not show, however, that the City fired him because of his race. It just shows that Whitaker thinks the City should not have fired him. But, as stated above, the

12

Court does not assess the wisdom of firing Whitaker; it merely decide whether the City fired him for a discriminatory reason.[14]

Moreover, the portion of Haley's deposition that Whitaker cites on this point shows that, just like Whitaker, Grandstaff had to talk with Haley before she could terminate an employee. (Haley Dep. 68:9-24.)[15]  Thus, this evidence does not show pretext.  It "amounts simply to more excuses for [Whitaker's] performance, which does not create a genuine issue of material fact to establish pretext." (ECF No. 10, at 10.)

Finally, Whitaker's arguments regarding his chronic tardiness do not establish pretext.  In May 2016, Haley emailed Whitaker that his chronic absences made him less effective. (ECF No. 10-9.)  Thus, even if he did not have a set schedule, Whitaker knew that he had missed enough work to raise concerns about how those absences affected his job performance.  This evidence undercuts Whitaker's claim that "there is no documentation to support any prior discussions regarding a concern in his attendance." (ECF No. 9, at 20-21.)  It also substantiates the City's assertion that Whitaker's tardiness provided a legitimate reason to fire him.  Finally, nothing requires the City to perform an analytical search on Whitaker's computer before firing him for chronic absenteeism and tardiness.

Ultimately, Whitaker provides a litany of excuses to explain why he thinks the City should not have fired him for the late CAFRs.  He does not, however, provide any evidence that would

---

[14] *See DeJarnette*, 133 F.3d at 299 ("Our sole concern is 'whether the reason for which the defendant discharged the plaintiff was discriminatory.  Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" (quoting *Giannopoulos*, 109 F.3d at 410-11)).

[15] The parties attached portions of the depositions cited herein as exhibits to their briefs in support of and opposition to summary judgment.  For ease of reference, the Court cites to the name of the deponent instead of exhibit number.

allow a jury to find that the City fired him because of his race. Thus, even if Whitaker could

establish a prima facie case of discrimination, the Court would still grant summary judgment to

the City.

### B. § 1981—Retaliation

"A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that '(1) he

engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his

employer]; and (3) [the employer] took the adverse action because of the protected activity."

*Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (alterations in original)

(quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)). "Once the plaintiff

makes this case, the employer can defend itself by producing 'evidence of a legitimate, non-

discriminatory reason for taking the adverse employment action.'" *Id.* (quoting *Spriggs*, 242 F.3d

at 190). If the employer does that, the burden shifts back to the plaintiff to prove pretext. *Hawkins*,

203 F.3d at 281 n.1 ("The *McDonnell Douglas* framework applicable to claims of race

discrimination applies to retaliation claims as well.").

### 1. Protected Activity[16]

The City argues that Whitaker did not engage in protected activity when he contacted City

Council about alleged EEOC violations.

"Protected activity under § 1981 includes opposing 'policies or practices that discriminated

against any person on the basis of race.'" *Cepada v. Bd. of Educ. of Balt. Cnty.*, 974 F. Supp. 2d

772, 788 (D. Md. 2013) (quoting *Proa v. NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 471-72 (D. Md.

---

[16] "Federal courts analyze violations of Section 1981 . . . under the same standards as Title VII of the Civil Rights Act of 1964. . . ." *White v. Gaston Cnty. Bd. of Educ.*, No. 3:16cv552, 2018 WL 1652099, at *7 (W.D.N.C. Apr. 5, 2018). Accordingly, the Court applies legal principles from Title VII cases to Whitaker's § 1981 case.

2009)). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Young v. HP Enter. Servs., LLC*, No. 1:10cv1096, 2011 WL 3901881, at *5 (E.D. Va. Sept. 6, 2011) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). That said, "an employee's opposition constitutes protected activity where the employer understood or should have understood that the employee opposed an unlawful practice." *Perry v. Maryland*, No. ELH-17-3619, 2019 U.S. Dist. LEXIS 84171, at *22-23 (D. Md. May 17, 2019).

On November 9 and December 15, 2016, Whitaker contacted City Council regarding unspecified EEOC violations. (ECF No. 8-19, 8-20.) Although neither communication details the substance of those EEOC violations, a reasonable jury could find that Whitaker engaged in protected activity by notifying City Council of these purported EEOC violations.

### 2. *Causation*

Even though Whitaker offers evidence of engaging in protected activity, for the reasons stated in Section II.A.3-4, the City "has articulated a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Whitaker's employment[,] and Whitaker cannot establish that the proffered reason is pretextual." (ECF No. 8, at 18.) Stated differently, Whitaker cannot prove but for causation.

Whitaker argues that three facts establish pretext. First, Haley fired him in part because he "felt it was unprofessional for Whitaker to bring his concerns of violations to City Council." (ECF No. 9, at 22.) Second, the temporal proximity between the December 15, 2016 email and his termination establishes a causal connection between his protected behavior and his termination. (*Id.*) And third, he "was never issued a counseling [sic] or indicator that his employment was in jeopardy." (*Id.*) All three arguments fail.

15

Whitaker's first argument fails because he misstates the record. Haley did not fire Whitaker because he "felt it was unprofessional for Whitaker to bring his concerns of violations to City Council." (*Id.*) Rather, Haley testified that "it's not appropriate for a director to go behind the City Manager's back and engage in direct communication with members of Council and not let the manager know about it." (Haley Dep. 79:3-6.) And although Haley understandably said he did not always agree with what Whitaker told City Council, he reiterated that he took issue with *how* Whitaker communicated with City Council, not *what* he communicated. (*Id.* at 79:13-23.) Haley's termination letter supports this testimony, as it describes Whitaker acting "unprofessionally, particularly with respect to your staff and in your communications with your staff and City Council" as one of the reasons for Whitaker's termination. (ECF No. 8-21.)

Whitaker's argument about temporal proximity also fails. "[T]iming alone generally cannot defeat summary judgment once an employer has offered a convincing, nonretaliatory explanation" for an adverse employment action. *S.B. ex rel. A.L. v. Bd. of Educ. of Hartford Cnty.*, 819 F.3d 69, 79 (4th Cir. 2016). Here, to establish but for causation, Whitaker points to the temporal proximity between his December 15, 2016 email to City Council and his termination the next day. But because the City has offered convincing, nonretaliatory reasons for terminating Whitaker, temporal proximity alone does not allow Whitaker to survive summary judgment.

Finally, Whitaker does not explain or cite any reason why the City had to provide him prior notice before firing him. Accordingly, the Court will grant the City summary judgment on Whitaker's § 1981 retaliation claim.

### C. § 1983—First Amendment

"A plaintiff seeking to recover for First Amendment retaliation must allege that (1) []he engaged in protected First Amendment activity, (2) the defendants took some action that adversely

affected h[is] First Amendment rights, and (3) there was some causal relationship between h[is] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Retaliatory discharge cases involving public employees require courts to balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (alteration in original) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

"[T]o determine whether a public employee has stated a claim under the First Amendment for retaliatory discharge," courts

> must determine (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.

*Id.* at 277-78. The Fourth Circuit has described the third factor—the causation requirement—as "rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; [a] claimant must show that 'but for' the protected expression the employer would not have taken the alleged retaliatory action." *Huang v. Bd. of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990).[17]

---

[17] Whitaker claims that he "does not have to prove 'but for' causation." (ECF No. 9, at 27.) He asserts: "Defendant is incorrect at page 21 of its brief when it claims that Whitaker has to prove that his speech was the but for cause of his termination. The court in Huang misstated the burden of proof in retaliatory action cases." (*Id.*) Not so. Although the Fourth Circuit does not apply the *Huang* but for causation standard when ruling on a motion to dismiss, it does when ruling on a motion for summary judgment. *See, e.g., Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015); *Tobey v. Jones*, 706 F.3d 379, 390-91 (4th Cir. 2013).

### *1. Protected Speech*

Whitaker identifies two communications he made regarding the misuse of government funds as protected speech—his August 18, 2016 email to Haley and Dane and his November 9, 2016 letter to City Council. (Whitaker Dep. 160:14-18.) The City contends that Whitaker did not engage in protected speech because both those communications "occurred during the normal course of Whitaker's duties as Finance Director." (ECF No. 8, at 20.)

Although the November 2016 letter mentions the misuse of government funds only briefly at the end of a letter that otherwise explains the tardiness of the 2015 CAFR, both communications identified by Whitaker mention the misuse of government funds by other City employees. The parties argue extensively about whether the Court should consider these communications protected speech. But, because Whitaker has not produced any evidence to create a genuine dispute regarding the but for causation requirement of his § 1983 claim, the Court need not engage in this "highly fact-intensive inquiry." *See Stickley v. Sutherly*, 416 F. App'x 268, 272 (4th Cir. 2011) ("[T]he line marking when something becomes a matter of public concern is blurry, and thus the boundary confining a public official's behavior is hard to discern."). Instead, the Court assumes, without deciding, that Whitaker engaged in protected speech.

### *2. Causation*

The City argues that "[e]ven if Whitaker's speech was protected by the First Amendment, summary judgment in favor of the City is appropriate because his speech was not the 'but for' cause of his termination." (ECF No. 8, at 21.) For the reasons stated in Sections II.A.3-4 and II.B.2, the City has shown that it fired Whitaker for legitimate, nondiscriminatory reasons, and Whitaker has not established that the reasons serve merely as pretext. Accordingly, the Court will grant the City's motion for summary judgment on this claim.

18

### D. VFATA

The VFATA "is modeled after the federal False Claims Act" ("FCA") and "seeks to eliminate fraud regarding money or property belonging to the Commonwealth of Virginia." *Brockdorff v. Wells Mgmt. Grp., LLC*, No. 3:15cv137, 2015 WL 3746241, at *4 (E.D. Va. June 15, 2015). The VFATA "includes an anti-retaliation provision" that punishes employers who retaliate against an employee who tries to prevent a violation of the VFATA. *Id.*; Va. Code § 8.01-216.8.

Federal courts in Virginia look to the FCA for guidance in analyzing claims under the VFATA. *See United States v. Ndutime Youth & Fam. Servs., Inc.*, No. 3:16cv653, 2020 WL 5507217, at *15 (E.D. Va. Sept. 11, 2020) ("Because the FCA and VFATA contain similar provisions, federal courts in Virginia apply the same pleading standard to VFATA claims."). To establish a prima facie case under the anti-retaliation provision of the FCA, and thus the analogous anti-retaliation provision of the VFATA, a plaintiff must establish "that (1) he engaged in a protected activity; (2) the employer knew about the activity; and (3) the employer retaliated against him in response." *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016). Additionally, "a retaliation claim under the FCA requires proof of 'but-for' causation." *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 177 (4th Cir. 2018).[18]

The City argues that, "[a]ssuming for the purposes of summary judgment that Whitaker's August 18, 2016 email to Haley constituted a protected activity for the purpose of the VFATA, there is no evidence to suggest that this activity was the 'but for' cause of Whitaker's termination."

---

[18] Whitaker rejects this binding Fourth Circuit precedent and the City's "ideology that the but for standard applies to the FCA." (ECF No. 9, at 29.) To support his view, Whitaker cites *Shaw v. Titan Corp.*, 255 Va. 535, 498 S.E.2d 696 (1998), for the proposition that courts should not interpret "because of" to mean "but for." (ECF No. 9, at 29.) The Fourth Circuit squarely rejected that argument in *United States ex rel. Cody*, however. 746 F. App'x at 177.

(ECF No. 8, at 22.)  Whitaker responds that "Haley indicated in his testimony that he was aware of Whitaker's reports" and that Haley fired him "for going to City Council."  (ECF No. 9, at 30.) As described the preceding sections, however, Whitaker cites no evidence to establish that the City would not have fired him but for his reports about the misuse of funds.  This entitles the City to summary judgment.[19]

### III. CONCLUSION

The Court concludes that the undisputed material facts entitle the City to summary judgment on all four counts.  Accordingly, the Court will grant summary judgment for the City. Additionally, the Court will deny as moot the parties' joint motion to reset pretrial deadlines.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.


Date: 9 December 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[19] Perhaps recognizing that he has no evidence to support his VFATA claim, Whitaker argues that if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, Summary Judgment is not appropriate." (*Id.*) But Whitaker has not identified any material fact that turns on witness credibility.  Moreover, Whitaker cannot create a genuine issue of material fact by pitting the City's evidence that it fired Whitaker for legitimate, nondiscriminatory reasons against his unsubstantiated assertions to the contrary.  Holding otherwise would allow Whitaker to transform this motion for summary judgment into a motion to dismiss.